JONES, Appellee,

v.

VILLAGE OF CHAGRIN FALLS, Appellant.

[Cite as *Jones v. Chagrin Falls* (1997), 116 Ohio App.3d 249.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67416.

Decided June 16, 1997.

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Sheldon Berns* and *Benjamin J. Ockner,* for appellee.

*Joseph Diemert, Jr. & Associates Co., L.P.A.,* and *Joseph W. Diemert, Jr.,* for appellant.

---

JAMES M. PORTER, Judge.

This case is before this court on remand pursuant to the judgment and mandate of the Supreme Court of Ohio, dated February 19, 1997, reversing the judgment of the court of appeals. See *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388. The remand requires this court to "decide the issue presented for review by the parties, *i.e.,* the proper interpretation of the village zoning ordinance." *Id.* at 463, 674 N.E.2d at 1393. Appellant's assignments of error are contained in the Appendix hereto.

Given the Supreme Court's disposition finding that the trial court did not err in entertaining appellee's declaratory judgment action,[1] the sole issue on remand is whether the trial court erred in granting summary judgment in favor of appellee Jones as a matter of law by finding that "a bank or savings and loan is a financial office and as such is a permitted use in the Office District of Chagrin Falls" as defined by Chagrin Falls Zoning Code 1135.02. We find no error and affirm the trial court's judgment.

---

1. The Supreme Court found that appellant Chagrin Falls had waived its affirmative defense of failure to exhaust administrative remedies by failing to raise same on appellee Jones's motion for summary judgment. On remand, therefore, we must follow the law of the case and give no effect to the administrative interpretation by the village below. In other words, as we understand the Supreme Court's decision herein, the trial court was free, as we are, to decide the interpretation question raised in the declaratory judgment action *de novo* without any deference to the village's construction or administrative process.

Under Civ.R. 56, summary judgment is proper when:

"(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."

*State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynolds-burg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d 265, 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio modified the summary judgment standard as was applied under *Wing v. Anchor Media, Ltd. of Texas.* Presently, under the new standard, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or a material element of the nonmoving party's claim." *Dresher* at 296, 662 N.E.2d at 276.

This court reviews the lower court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination."). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71

Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

The issue in this case is whether a bank can be built on appellee Jones's property in an area that is zoned by Chagrin Falls as an office district based on the interpretation of "financial office." The Chagrin Falls Planning and Zoning Code ("Village Code") permits the following uses in the office district:

"Office buildings accommodating administrative, business, executive, *financial,* governmental, insurance, investment, professional, public or quasi-public, real estate or service offices, except that no retail sales involving the physical exchange of merchandise on the premises shall be permitted as a main use." (Emphasis added.) Section 1135.02(a)(1).

The resolution of this issue turns on the meaning of "financial office" and whether a bank falls within the definition. Section 101.03(a) of the Village Code states the following rule of construction:

"All words and phrases shall be construed and understood according to the common and approved usage of the language, but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning."

"Financial office" is not defined anywhere in the Village Code; therefore, pursuant to the code's own rule of construction, it "shall be construed and understood according to the common and approved usage of the language."

The Ohio Supreme Court decision in *State ex rel. Spiccia v. Abate* (1965), 2 Ohio St.2d 129, 31 O.O.2d 228, 207 N.E.2d 234, syllabus, likewise gives emphasis to the rule in interpreting terms not defined in zoning ordinances:

"What constitutes a 'restaurant' as opposed to a 'drive-in restaurant' for the purpose of determining the permitted use of property under a zoning classification in which those terms are not otherwise defined is determined by considering the common and ordinary meaning of those terms, liberally construing them in favor of the permitted use so as not to extend the restrictions of the ordinance to any limitation of use not therein clearly prescribed."

A "bank" is commonly understood to be a financial institution. Several sections of the Revised Code define "financial institution" to include a "bank." See R.C. 9.02(3); R.C. 323.134; R.C. 1339.31(F); R.C. 1161.01(B). It is also common practice to resort to dictionaries as a source for determining the established, ordinary meaning of words. *Rite Aid of Ohio v. Marc's Variety Store* (1994), 93 Ohio App.3d 407, 415, 638 N.E.2d 1056, 1061–1062, citing *Andrews v. Tax Comm.* (1939), 135 Ohio St. 374, 376, 14 O.O. 250, 251, 21 N.E.2d

106, 107. Webster's Third New International Dictionary (Unabridged ed. 1993) defines "financial institution" as:

"An enterprise specializing in the handling and investment of funds (as a bank, trust company, insurance company, savings and loan association, or investment company)."

The term "bank" is defined in the same dictionary as:

"2. An establishment for the custody, loan, exchange, or issue of money, for the extension of credit, and for facilitating the transmission of funds by drafts or bills of exchange *also*: an institution incorporated for performing one or more of such functions." *Id.*

Chagrin Falls nevertheless argues that Village Code 1137.02 regarding retail district uses applies to banks. However, that provision permits only banks with "drive-in services." (Section 1137.02[a][3][C].) Plaintiff is not proposing the construction of a "drive-in" bank facility.

■ Furthermore, "zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled" and therefore "must be strictly construed * * *" *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 245–246, 421 N.E.2d 152, 154; *Cash v. Brookshire United Methodist Church* (1988), 61 Ohio App.3d 576, 579, 573 N.E.2d 692, 694–695; *Freedom Twp. Bd. of Zoning App. v. Portage Cty. Bd. of Mental Retardation and Developmental Disabilities* (1984), 16 Ohio App.3d 387, 390, 16 OBR 456, 458–459, 476 N.E.2d 360, 363–364.

Therefore, pursuant to the common usage and understanding of the word "financial office" and liberally construing the terms in favor of a permitted use, banks are included in the definition of "financial offices." As a matter of law, summary judgment was properly entered in favor of the plaintiff.

Assignments of Error I, II, and III are overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, C.J., concurs.

O'DONNELL, J., dissents.

O'DONNELL, Judge, dissenting.

On remand from the Ohio Supreme Court, we are directed to decide whether the trial court's determination that a branch bank is a financial office comports with the Zoning Code of Chagrin Falls. Since the zoning ordinances do not

regard a branch bank as either a financial office or a permitted use within the village's office district, I respectfully dissent from the majority opinion.

Although the matter presented to us concerns a grant of summary judgment which we review *de novo,* because the facts in this case are generally not disputed, the issue for review is whether Jones is entitled to judgment as a matter of law.

In *Castlebrook, Ltd. v. Dayton Prop. L.P.* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811, the court stated:

"* * * Where a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use an abuse of discretion standard.  In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law. Confusion has been engendered by an unfortunate choice of words when courts have said on occasion that an abuse of discretion connotes 'more than an error of law.'  It would be more accurate to say that an abuse of discretion is 'different from an error of law.'  A trial court's purely legal determination will not be given the deference that is properly accorded to the trial court with regard to those determinations that are within its discretion."  *See Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 639 N.E.2d 484.

It is a fundamental principle of law that Chagrin Falls may, within its police power, regulate the use of land and the construction of buildings within the territorial confines of the village.  See *Gibson v. Oberlin* (1960), 171 Ohio St. 1, 12 O.O.2d 1, 167 N.E.2d 651.

As cited in *Wray v. Wymer* (1991), 77 Ohio App.3d 122, 129, 601 N.E.2d 503, 507, the court there stated:

"In *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, at 35–36, 567 N.E.2d 1018, at 1024–1025, the Ohio Supreme Court set forth the following general rules of statutory construction:

" 'A number of basic rules must be followed by a reviewing court in construing the regulations and statutes at issue.  First, all statutes which relate to the same general subject matter must be read in *pari materia.*  * * * And, in reading such statutes in *pari materia,* and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes.  * * * The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections.  * * *' "

A fair reading of the Chagrin Falls ordinances *in pari materia,* specifically Chapter 1135, Office District, Chapter 1137, Retail Business District, and Chapter 1138, Central Shopping District, leads to the ineluctable conclusion that

Chagrin Falls has carefully defined, planned, and located its permitted uses in areas within its village for specific purposes.

Here, Village Code 1135.01 sets forth the village's intent in establishing its Office District: " * * * to promote office development appropriately designed *and located* to achieve, among others, the following objectives:

"(a) * * *

"(b) * * *

"(c) To permit development, which by virtue of its *characteristic traffic genera-tion, hours of operation* and *noise levels,* may serve as an appropriate *transition-al use between residential areas and nearby* retail or industrial areas." (Empha-sis added.)

In furtherance of that stated objective, Village Code 1137.02(a)(3) establishes banks and savings associations as permitted uses in the retail business district, and Village Code 1138.02(a)(3) establishes banks and savings associations as permitted uses in the central shopping district.

"An unambiguous statute is to be *applied,* not interpreted." (Emphasis added.) *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 16 O.O.3d 212, 404 N.E.2d 159. In *BP Oil Co. v. Dayton Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 423, 430, 672 N.E.2d 256, 260, the court, when confronted with a similar problem of construing language contained in an ordinance, stated in relevant part:

"* * *Where an ordinance is plain and unambiguous and conveys a clear and definite meaning, a court is to apply only that interpretation. *Meeks v. Papado-pulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213–214, 404 N.E.2d 159, 161–162. In that case, there is no need to apply the rules of construction. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77, 79–80. However, where the language of an ordinance is ambiguous a court may resort to the rules of construction to resolve the ambiguity. *Id.* An ordinance is ambiguous when it is subject to various interpretations. *Id.* Specifically, an ambiguity exists if a reasonable person can find different meanings in the ordinance and if good arguments can be made for either of two contrary positions. *Id.; see, also, Laskaris v. Wisconsin Dells, Inc.* (1986), 131 Wis.2d 525, 530–532, 389 N.W.2d 67, 70; *Atlas Ready–Mix of Minot, Inc. v. White Properties, Inc.,* N.D. (1981), 306 N.W.2d 212."

The majority opinion, it seems to me, goes to great lengths to define a "bank" as a "financial institution," which goes wide of the mark of determining whether a bank is a financial office. More relevant, I believe, is R.C. 1101.01, which defines "bank," "banking office," and "branch":

"(B) 'Bank' means a corporation that solicits, receives, or accepts money or its equivalent for deposit *as a business* * * *;

"(C) 'Banking office' means an office or other place at which a bank receives money or its equivalent *from the public* for deposit and *conducts a general banking business* * * *;

"(D) 'Branch' means a banking office that is not also the bank's principal place of business consistent with its articles of incorporation or articles of association." (Emphasis added.)

In defining permitted uses in the Chagrin Falls office district, retail sales are specifically excepted. After reading the foregoing chapters of the Village Code, no ambiguity exists regarding the location of banks, since both the ordinances and the Revised Code define a "branch bank" as a retail enterprise designed to conduct general business with the public. This use is not permitted in the office district of Chagrin Falls.

Since Jones's property is zoned office district, and since the intended use of his property is for a branch bank (which means a place at which a bank receives money from the public for deposit and conducts a general banking business), and since the Chagrin Falls ordinances permit banks only in the retail business or central shopping districts, I do not believe Jones is entitled to judgment as a matter of law, and the trial court, therefore, improperly granted summary judgment in this case.

In line with *Castlebrook, supra,* because the judgment of the trial court is based upon a misconstruction of the law, this court may properly substitute its judgment for that of the trial court and, accordingly, I dissent from the conclusion reached in the majority opinion and would reverse that judgment.

## APPENDIX

"I. The trial court erred in granting the plaintiff–appellee's motion for summary judgment, as material questions of fact exist regarding the appellee's proposed use of the property under the Chagrin Falls Planning and Zoning Code Chapters 1105, 1135, and 1137. (Judgment and opinion.)

"II. The trial court erred by interpreting the Chagrin Falls Zoning Code, a job already performed by the chief administrative officer of Chagrin Falls, the board of zoning appeals, and the village council, a job not within the purview of a court unless the ordinance or its application is unconstitutional or arbitrary. (judgment and opinion.)

"III. The trial court erred not only in interpreting the Chagrin Falls Zoning Code, but also in its interpretation, thereby displaying an arbitrary attitude

inimicable to the legislative powers and the rights of the representative government of Chagrin Falls.   (judgment and opinion.)"