CLINE, APPELLANT, *v.* OHIO BUREAU OF MOTOR VEHICLES, APPELLEE.

[Cite as *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93.]

(No. 90–1331—Submitted April 10, 1991—Decided July 10, 1991.)

*Plassman, Rupp, Hensal & Short* and *Peter D. Short,* for appellant.

*William R. Swigart,* prosecuting attorney, and *Roger D. Nagel,* for appellee.

---

Cacioppo, J.  The case before us raises questions with respect to the Ohio implied consent statute, former R.C. 4511.191.  The issue presented is whether a licensee is subject to license suspension when he refuses to submit to a breathalyzer test on the grounds that the request was made more than two hours after he operated a vehicle while under the influence of alcohol on a public highway.

Appellant bases his refusal of the officer's request to submit to a chemical test upon the following statutory provision which reads, in relevant part:

"In any criminal prosecution for a violation of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance *withdrawn within two hours of the time of the alleged violation.*"  (Emphasis added.)  Former R.C. 4511.19(B), effective March 20, 1987, now R.C. 4511.19(D).

Appellant asserts that the two-hour period creates a rule which precludes the state from requesting that a person arrested for operating a vehicle while under the influence of alcohol submit to a chemical test or tests.  The state argues that the two-hour provision must be read in context and limited to the subject of the section which relates to the admissibility of evidence in criminal proceedings.

Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation.  *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161, citing *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus.  However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent.  *Meeks, supra,* 62 Ohio St.2d at 190, 16 O.O.3d at 214, 404 N.E.2d at 162; *Henry v. Central Natl. Bank* (1968), 16 Ohio St.2d 16, 45 O.O.2d 262, 242 N.E.3d 342; *Carter v. Youngstown* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63; *Commercial Credit Co. v. Schreyer* (1929), 120 Ohio St. 568, 166 N.E. 808.  The conflict among the

appellate courts indicates strongly that the relationship, if any, between R.C. 4511.191 and 4511.19 is ambiguous.

The primary rule in statutory construction is to give effect to the legislature's intention. *Carter, supra,* at paragraph one of the syllabus. To ascertain the legislative intent, courts rely upon ordinary principles of statutory construction. *Stewart v. Trumbull Cty. Bd. of Elections* (1973), 34 Ohio St.2d 129, 130, 63 O.O.2d 227, 227–228, 296 N.E.2d 676, 677.

Former R.C. 4511.19(B) and the implied consent statute were enacted in 1968 under Am.Sub. H.B. No. 380 for the purpose of improving the state highway program. (132 Ohio Laws, Part II, 2611.) Although the General Assembly enacted these statutory provisions at the same time and for the same general purpose, our analysis is not complete. Legislative intent must be determined from the language of the statute itself, *id.; State v. Singer* (1977), 50 Ohio St.2d 103, 108, 4 O.O.3d 237, 240, 362 N.E.2d 1216, 1220, as well as from other matters, see R.C. 1.49. In determining intent, it is the duty of the court to give effect to the words used, not to delete words used or insert words not used. *State, ex rel. General Elec. Supply Co., v. Jordano Elec. Co.* (1990), 53 Ohio St.3d 66, 71, 558 N.E.2d 1173, 1177; *State, ex rel. Sears, Roebuck & Co., v. Indus. Comm.* (1990), 52 Ohio St.3d 144, 148, 556 N.E.2d 467, 471; *Columbus–Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 446, 254 N.E.2d 8, 9.

The General Assembly chose to address the methods of withdrawing and analyzing bodily substances submitted pursuant to the implied consent law in former R.C. 4511.19(B), which provided in pertinent part:

"When a person submits to a blood test at the request of a police officer under section 4511.191 of the Revised Code, only a physician, a registered nurse, or a qualified technician or chemist shall withdraw blood for the purpose of determining its alcohol, drug, or alcohol and drug content. This limitation does not apply to the taking of breath or urine specimens. A physician, a registered nurse, or a qualified technician or chemist may refuse to withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content of the blood, if in his opinion the physical welfare of the person would be endangered by the withdrawing of blood.

"Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code."

This section speaks to those elements which are considered important in determining the reliability of the result of the analysis. The legislature delegated rulemaking authority to the Department of Health to specify

techniques for analysis and qualifications for those conducting the analysis. Neither the section nor rules promulgated under it address the outer time limit for giving the test. While the first paragraph of R.C. 4511.19(B) speaks to test results being withdrawn within two hours of the time of the alleged violation, it relates solely to the admissibility of such test results. The two-hour provision is a limitation upon the admissibility of evidence in criminal prosecutions.

R.C. 4511.191(A), the implied consent statute, effective October 20, 1987, provided:

"Any person who operates a vehicle upon the public highways within this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine, for the purpose of determining the alcohol, drug, or alcohol and drug content of his blood, breath, or urine if arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. The chemical test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person to have been operating a vehicle upon the public highways in this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine. The law enforcement agency by which the officer is employed shall designate which of the tests shall be administered."

This section details the obligation of a person arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. He must consent to the police officer's request to take the chemical test or tests in order to be in compliance with the statute. This section also details the obligation of a police officer. He must have reasonable grounds to believe the person was operating a vehicle upon the public highways while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, when he requests that the person take a chemical test or tests. A fair reading of this section is that when police officers comply with the provisions of the section, individuals must do so as well in order to avoid the consequences of refusal.

This interpretation is harmonious with the chapter as a whole because it gives full effect to each statute in question. The two-hour limit retains its vitality as a carefully prescribed legislative decision upon evidentiary issues and does not limit the vitality of the implied consent law.

Moreover, it comports with case law construing R.C. 4511.19. In *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130, this court analyzed the effect of the two-hour limit on evidence sought to be suppressed on the grounds that the bodily substance was withdrawn more than two hours from the time of the alleged violation. The court held that the results of a properly administered bodily substances test may not be admitted in evidence if withdrawn more than two hours from the time of the alleged violation in prosecutions under R.C. 4511.19(A)(2), (3) or (4). *Id.* at paragraph one of the syllabus. However, in prosecutions under R.C. 4511.19(A)(1), driving under the influence, the results may be admitted in evidence if presented with expert testimony. *Id.* at paragraph two of the syllabus. The fact that a bodily substance is withdrawn more than two hours after the time of the alleged violation does not, alone, diminish the probative value of the test results in a R.C. 4511.19(A)(1) prosecution. *Id.* at 104, 532 N.E.2d at 134. It logically follows that a request for chemical tests pursuant to the implied consent statute made after two hours from the time of the alleged violation is allowed since those tests results may be admitted into evidence in a prosecution for violation of R.C. 4511.19(A)(1).

Our holding that the two-hour provision does not preclude the state from requesting that a licensee submit to tests even though more than two hours have passed from the time of the alleged violation promotes the purpose of the implied consent statute. That purpose is to remove drivers from Ohio roadways who would insist on exercising driving privileges while under the influence of alcohol. *Kettering v. Baker* (1975), 42 Ohio St.2d 351, 355, 71 O.O.2d 322, 324, 328 N.E.2d 805, 807. The implied consent statute provides a clear remedy by suspending the licenses of those drivers who refuse to take a sobriety test and is separate from, independent of, and cumulative to a criminal prosecution. *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 35–36, 6 O.O.3d 149, 151, 368 N.E.2d 1253, 1256. It is designed to discourage any person from refusing to take the tests when he is arrested for driving while under the influence.

We hold that a person arrested for operating a vehicle under the influence of alcohol who refuses to submit to a chemical test, even though the test is requested more than two hours after the alleged violation, is subject to the implied consent law if the police officer making the request has "reasonable grounds to believe the person to have been operating a vehicle upon the public highways in this state while under the influence of alcohol." (Former R.C. 4511.191[A].)

We next consider whether the trial court's finding that Trooper Rayot had reasonable grounds to believe appellant was driving under the influence of

alcohol on a public highway is against the manifest weight of the evidence. Although Rayot observed appellant under the influence of alcohol while sitting behind the steering wheel of a vehicle with the engine running in a private field, appellant contends that Rayot could not determine that he had driven while under the influence of alcohol on the public highway since Rayot did not know how long appellant had been in the field.

Pursuant to former R.C. 4511.191(F), as in effect October 20, 1987, the scope of the hearing to determine whether a driver's license shall be suspended is limited to consideration of four issues:

"[1] whether the law enforcement officer had reasonable ground to believe the petitioner was operating a vehicle upon the public highways within this state while under the influence of alcohol * * *;

"[2] whether the petitioner was placed under arrest;

"[3] whether the petitioner refused to submit to the chemical test upon the request of the officer; and

"[4] if the petitioner refused, whether he was advised of the consequences of his refusal."

A suspension will be upheld if the court finds that the petitioner had failed to show error in the action taken by the Registrar, or in one or more matters within the scope of the hearing. *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 115–116, 45 O.O.2d 254, 256, 267 N.E.2d 311, 314. The burden is on the petitioner to prove by a preponderance of the evidence that there was error. *Id.* at 116, 54 O.O.2d at 256, 267 N.E.2d at 314–315. *Andrews, supra,* paragraph two of the syllabus.

At the suspension hearing, Rayot testified that he received a report of a vehicle in a ditch on County Road M–50, found the vehicle in a ditch approximately five feet off the edge of the road with its engine running, and saw the appellant sleeping behind the steering wheel. Rayot testified that appellant did not respond to his knocks on the vehicle window, so he opened the door and nudged the appellant until he awoke. Rayot testified that appellant admitted to being the driver of the vehicle. Rayot observed that appellant had a strong odor of alcohol on his breath, and slurred speech. There was no evidence adduced that appellant imbibed after the accident. Evidence was adduced to the contrary that appellant had nothing to drink after the vehicle went into the ditch.

A thorough review of the record convinces us that the court could find that Rayot had reasonable grounds to believe appellant had been operating a

vehicle while under the influence of alcohol on a public highway. We find that the appellant failed to show error.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting for RESNICK, J.